**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAMES CROSS,**

      **Plaintiff,**

**vs.**                                   **Case No. 4:06cv460-RH/WCS**

**JAMES McDONOUGH,**

      **Defendants.**

_____/

**<u>REPORT AND RECOMMENDATION</u>**

This is an amended petition for writ of habeas corpus filed by James Cross pursuant to 28 U.S.C. § 2254.  Doc. 15.  Petitioner challenges his convictions in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 02-CF-3364, for burglary of an occupied dwelling, attempted sexual battery, battery, and resisting an officer without violence.  Respondent filed a motion to dismiss, doc. 19, arguing that the petition was not timely filed, and Petitioner filed a reply, doc. 21.  After review of these documents, the filing of additional information was directed. Doc. 23.  In response to that order, Respondent filed a supplemental response, doc. 26, and Petitioner filed a reply, doc. 27.

After review of these materials, I found that I needed more evidence.  I entered an order on January 4, 2008, seeking that information.  Doc. 28.  The parties responded.  Docs. 29 and 30.  After review of those materials, I found that I still had not exhausted all evidentiary possibilities and ordered a final search.  Doc. 31.  Respondent responded.  Doc. 32.

This complicated case is now ready for a report and recommendation.  According to my calculations, Petitioner filed his § 2254 petition 2 days late.  The motion to dismiss should be granted unless there was some state court activity that tolled the one year period.

There is a one year limitations period for filing a § 2254 petition, which generally runs from the date on which the judgment at issue became final by conclusion of direct review or the expiration of time for seeking direct review.   28 U.S.C. § 2244(d)(1)(A).[1] Petitioner's convictions were affirmed on direct appeal on Monday, July 26, 2004.  Doc. 19, Ex. F.  *See,* Cross v. State, 877 So. 2d 933 (Fla. 1st DCA 2004). The 90th day after July 26, 2004, was October 24, 2004, a Sunday, so October 25, 2004, was Petitioner's last day to file a petition for writ of certiorari to the United States Supreme Court.  Clay v. United States, 537 U.S. 522, 123 S.Ct. 1072, 1075, 155 L.Ed.2d 88 (2003).[2]  The one

---

[1] The limitations period runs from the latest of specified dates.  Other possible commencement dates are the date on which an unconstitutional impediment which prevented the applicant from filing is removed; the date on which the right asserted was recognized by the Supreme Court and made retroactive on collateral review; and the date on which the factual predicate for the claim could have been discovered by due diligence.  § 2244(d)(1)(B)-(D).  None of these later dates apply in this case.

[2] The 90 days for seeking certiorari runs from the date of the opinion, not the mandate, or (if a petition for rehearing is timely filed) from the denial of rehearing or (if rehearing is granted) the subsequent entry of judgment.  S.Ct. Rule 13(3).  In computing time, the event that begins the period is excluded, and the last day is

year AEDPA period for filing a § 2254 petition in this court commenced the next day, on

October 26, 2004.[3]  Bronaugh v. Ohio, 235 F.3d 280, 285 (6th Cir. 2000) (applying

FED.R.CIV.P. 6(a)); Patrick v. McDonough, 2007 WL 3231740, *1, No.

4:06cv543-SPM/WCS, (N.D. Fla. Oct 29, 2007) (citing Bronaugh).

    Petitioner filed his state Rule 3.850 motion on August 3, 2005, the date of mailing

from the prison.[4]  Doc. 19, Ex. H (Rule 3.850 motion, pp. 1 and 52).  By that time, 281

days of the AEDPA one year period had elapsed (October 26, 2004, to August 2, 2005,

counting both the beginning and ending days).[5]

    The Rule 3.850 motion remained pending until June 28, 2006, when the First

District Court of Appeal issued its mandate affirming the trial court's denial of the

motion.  Id., Ex. L.  The AEDPA one year period was tolled during this period:

---

included unless it is a Saturday, Sunday, legal holiday, or day on which the court is
closed or inaccessible.  S.CT. RULE 30(1); FED.R.APP.P. 26(a); FED.R.CIV.P. 6(a).

    [3] Alternatively, as the Eleventh Circuit said in Sibley v. Culliver, 377 F.3d 1196
(11th Cir. 2004), the AEDPA one year "commences" on the day of the "deadline" (the
last day) for seeking certiorari in the Supreme Court.  377 F.3d at 1199.  The deadline in
that case was August 10, 2000.  Sibley then applied the conventional method of
counting, that is, not counting the first day, but counting the last day, and said that the §
2244(d) one year expired on August 10, 2001; that is, the last day to file a federal §
2254 habeas corpus petition was August 10, 2001.  Id.

    [4] Pursuant to the "mailbox" rule, a document submitted by a prisoner to prison
officials to be mailed and filed in the intended forum is deemed to have been "filed" on
the date delivered to prison officials for mailing.  Adams v. United States, 173 F.3d
1339, 1341 (11th Cir. 1999) (collecting cases).  The rule originated with Houston v.
Lack, 487 U.S. 266, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988).  This rule will be
discussed in detail ahead.

    [5] This calculation was manually calculated using a calculator and was also
obtained from:  http://www.timeanddate.com/date/duration.html  The automated
calculation (counting both beginning and ending days) was the same as the manual
calculation.

> The time during which a properly filed application for State post-conviction
> or other collateral review with respect to the pertinent judgment or claim is
> pending shall not be counted toward any period of limitation under this
> subsection.

Lawrence v. Florida, 127 S.Ct. 1079, 1082, 166 L.Ed.2d 924 (2007) (quoting 28 U.S.C.

§ 2244(d)(2) and noting that "the parties agree that AEDPA's limitations period was

tolled from the filing of Lawrence's petition for state postconviction relief until the Florida

Supreme Court issued its mandate affirming the denial of that petition."); Wainwright v.

Secretary, Dept. of Corrections, 2007 WL 3355559, No. 06-13453 (Nov. 13, 2007).

Therefore, the AEDPA one year was tolled from August 3, 2005, through June 28, 2006.

The AEDPA period began again on June 29, 2006, the day after the mandate

from the First District Court of Appeal issued.  Another 85 days of the AEDPA one year

period elapsed between June 29, 2006, and September 21, 2006, for a total of 366 days

(again including the first and last day of this period).  Thursday, September 21, 2006,

was the 366th day.  The period had expired on September 20, 2006, the 365th day.

Petitioner submitted his § 2254 petition to prison officials for mailing on Friday,

September 22, 2006, and that is the date it is deemed to have been filed in this court.

Doc. 8 (transferring the case from the Middle District of Florida), doc. 1-4 therein, p. 21

on the electronic case filing (ECF) docket.  That was the 367th day of the AEDPA

period.  Thus, unless there was some other state post-conviction motion pending that

caused the AEDPA period to be tolled, this § 2254 petition was untimely filed by 2 days.

In reply, Petitioner argues that two tolling events have not yet been counted.

First, he argues that he filed a state petition for writ of habeas corpus in the First District

Court of Appeal, case number 1D05-3478, alleging that his appellate counsel was

ineffective.  He also argues that his motion for rehearing in the appeal from the denial of his Rule 3.850 motion is still pending in the First District Court of Appeal, Case No. 1D06-195, thus rendering that appellate proceeding not final.

**The state habeas petition asserting ineffectiveness of appellate counsel**

As to the first issue, the online docket of the First District Court of Appeal reveals that Petitioner filed a petition for writ of habeas corpus in case number 1D05-3478 on July 20, 2005.[6]  To be more accurate, the petition was presented for mailing on July 11, 2005, and that is actually the date of filing.  Doc. 26-2, pp. 2 and 20 on ECF.  That petition was dismissed on September 12, 2005.  If this was a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment," 28 U.S.C. § 2244(d)(2), then the AEDPA one year period was tolled from July 11, 2005, to August 2, 2005, the day before the Rule 3.850 motion was filed.  The Rule 3.850 motion, of course, continued the tolling period, rendering the tolling provided by the appellate petition for writ of habeas corpus unnecessary.  This would provide another 23 days of tolling, and the § 2254 petition filed in this court would have been timely filed since only 2 days of tolling are needed.

Respondent supplied some of the record in case number 1D05-3478 from the First District Court of Appeal as attachments to document 26.  Respondent argues that the petition for writ of habeas corpus claiming ineffective assistance of appellate counsel was not "properly filed" and thus did not toll the AEDPA period.  "Where the petition is not 'properly filed' there is no tolling of the one year limitations period."  Sibley

---

[6] The docket is available at:

http://199.242.69.70/pls/ds/ds_docket_search?pscourt=1

v. Culliver, *supra*, n. 3, 377 F.3d at 1202, *quoting*, Hurley v. Moore, 233 F.3d 1295, 1297- 98 (11th Cir. 2000).

The certificate of service of this appellate petition for writ of habeas corpus states that Petitioner served his state habeas petition only upon the Attorney General of Florida.  Doc. 26, Ex. A, p. 19; doc. 26-2, p. 20 on ECF.  On July 26, 2005, the State of Florida was substituted by the court of appeal as Respondent.  *Id.*, Ex. B; doc. 26-4, p. 2 on ECF.  On the same date, the court ordered that the petition would be treated as a petition alleging ineffective assistance of counsel pursuant to FLA. R. APP. P. 9.040(c) and 9.141(c).  *Id.*, Ex. C; doc. 26-4, p. 4 on ECF.  Also on July 26, 2005, the First District Court of Appeal ordered Petitioner to serve his petition on the State Attorney for the Second Judicial Circuit, and gave the address, as required by FLA. R. APP. P. 9.141(c)(5)(A) and 9.420.  *Id.*, Ex. D; doc. 26-4, p. 6 on ECF.  The court specifically said:

> You are further directed to file with the clerk of this Court a certificate of service which demonstrates your compliance with this order.  The certificate of service shall be filed within 15 days from the date of this order.
>
> This Court will not consider the merits of the petition until receipt of proof of service on the proper person(s) as directed above.  Failure to timely file the certificate of service may result in the denial of the petition without further opportunity to be heard.  Florida Rule of Appellate Procedure 9.410.

*Id.*

FLA. R. APP. P. 9.141(c)(5) is entitled "*Procedure.*"  Subsection (A) requires that a petition alleging ineffective assistance of appellate counsel be served upon "the attorney general and the state attorney."  Subsection (B) of the Rule allows the appellate court

"by order" to "identify any provision of this rule the petition fails to satisfy" and permits

the court to allow the petitioner "a specified time to serve an amended petition."

On September 12, 2005, the First District Court of Appeal entered the following

order:

> Not having received a response to this Court's order of July 26, 2005,
> requiring petitioner to serve a copy of the petition on the State Attorney for
> the Second Judicial Circuit and to file a supplemental certificate of service,
> the above-styled cause is hereby dismissed.

*Id.*, Ex. E; doc. 26-4, p. 86 on ECF.

Artuz v. Bennett, 531 U.S. 4, 121 S.Ct. 361,148 L.Ed.2d 213 (2000) held that:

> An application is "filed," as that term is commonly understood, when it is
> delivered to, and accepted by, the appropriate court officer for placement
> into the official record. *See, e.g., United States v. Lombardo*, 241 U.S. 73,
> 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916) ("A paper is filed when it is delivered
> to the proper official and by him received and filed"); BLACK'S LAW
> DICTIONARY 642 (7th ed. 1999) (defining "file" as "[t]o deliver a legal
> document to the court clerk or record custodian for placement into the
> official record"). And an application is "properly filed" when its delivery
> and acceptance are in compliance with the applicable laws and rules
> governing filings. These usually prescribe, for example, the form of the
> document, the time limits upon its delivery, the court and office in which it
> must be lodged, and the requisite filing fee. *See, e.g., Habteselassie v.
> Novak*, 209 F.3d 1208, 1210-1211 (C.A.10 2000); 199 F.3d, at 121 (case
> below); *Villegas v. Johnson*, 184 F.3d 467, 469-470 (C.A.5 1999); *Lovasz
> v. Vaughn*, 134 F.3d 146, 148 (C.A.3 1998).

531 U.S. at 8, 121 S.Ct. at 363-364 (footnote omitted).

Subsequently, the Court held that a state timeliness rule is a "condition to filing"

that must be satisfied for a filing to be "properly filed" for AEDPA tolling purposes. The

Court "found that statutes of limitations are 'filing' conditions because they 'go to the

very initiation of a petition and a court's ability to consider that petition.' " Pace v.

DiGuglielmo, 544 U.S. 408, 417, 125 S.Ct. 1807, 1813, 161 L.Ed.2d 669 (2005), *quoted*

*in*, Allen v. Siebert, __ U.S. __, 128 S.Ct. 2, __ L.Ed.2d __ (Nov 05, 2007).  Pace also

ruled that if the state court found the state post-conviction motion to be untimely, the

motion would not be considered properly filed for purposes of tolling under § 2244(d)(2),

and "*that would be the end of the matter*."  Pace, 544 U.S. at 413-414, 125 S.Ct. at

1812, 161 L.Ed.2d 669 (2005), *quoting* (with added emphasis) Carey v. Saffold, 536

U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *see also* Sweet v. Sec'y, Dep't

of Corr., 467 F.3d 1311, 1316 (11th Cir. 2006) (quoting Pace).

More recently, the Court held that the question of whether a proceeding has been

"properly filed" does not turn upon whether the state law issue was a jurisdictional time-

bar.  Allen v. Siebert.  There, the Court said:

> [O]ur holding in *Pace* turned not on the nature of the particular time limit
> relied upon by the state court, but rather on the fact that time limits
> generally establish "conditions to filing" a petition for state postconviction
> relief. . . .
>
> Excluding from *Pace*'s scope those time limits that operate as affirmative
> defenses would leave a gaping hole in what we plainly meant to be a
> general rule, as statutes of limitations are often affirmative defenses. . . .
> Under the Court of Appeals' approach, federal habeas courts would have
> to delve into the intricacies of state procedural law in deciding whether a
> postconviction petition rejected by the state courts as untimely was
> nonetheless "properly filed" under § 2244(d)(2).  Our decision in *Pace*
> precludes such an approach.
>
> We therefore reiterate now what we held in *Pace* : "When a postconviction
> petition is untimely under state law, 'that [is] the end of the matter' for
> purposes of § 2244(d)(2).' "

Allen v. Siebert, *supra* (citations omitted).

In Hurley v. Moore, 233 F.3d 1295 (11th Cir. 2000), *cert. denied*,  532 U.S. 1013

(2001), our circuit held that a Florida post-conviction motion that was filed without the

oath required by FLA. R. CRIM. P. 3.850 was not "properly filed" and thus did not toll the

AEDPA period.  233 F.3d at 1298.  In <u>Sibley v. Culliver</u>, the court cautioned that:  "[J]ust because [an] application is pending, does not mean that it was properly filed."  377 F.3d at 1202, *quoting*, <u>Christian v. Baskerville</u>, 232 F.Supp.2d 605, 607 (E.D. Va. 2001).  The court there found the application not properly filed because it was delivered to the wrong court, did not comply with the requirements of the standard form, did not include two copies, was not accompanied by the filing fee, and did not include an *in forma pauperis* application.  *Id.* at 1203-1204.  "For these reasons, Sibley's Notice was not 'properly filed,' and so did not trigger statutory tolling under § 2254(d)(2)."  *Id.*, at 1204.

Petitioner at first said that he was aware of the order from the First District Court of Appeal requiring that he serve a copy of the petition on "opposing parties," apparently meaning the state attorney since that was the party who had not been served.  Doc. 27, p. 3.  He stated that he sent a copy "via institution legal mail staff, however, another proof of service was not returned *as one was already filed on or about the date of the said Order.*"  *Id.* (emphasis added).

Petitioner now avers under penalty of perjury that he did serve the State Attorney in compliance with this order.  Doc. 29, p. 3.  He avers that "shortly after complying with Rule 9.141, petitioner filed a 'Notice of Inquiry/Compliance" of which the state's liberal construction would have found to be compliant with its order entered on July 26, 2005. See Exhibit A."  *Id.*

Exhibit A is styled as in case number 1D05-3478.  The exhibit states:

Comes now Appellant, James Cross, pro se, and hereby respectfully moves this Honorable Clerk to acknowledge receipt of a certificate of service showing where service was made on the state attorney, in compliance with Rule 9.141, on July 18, 2005.  However, a order [sic] was entered by this Court on July 26, 2005, thereby ordering a copy of the

> petition for writ of habeas corpus be sent to the state attorney's office and
> that compliance of such order, by way of "amended proof of serviced" [sic]
> be filed with this Court.
>
> Therefore, it is respectfully submitted that the said Court order was
> complied with and acknowledgement [sic] of compliance is hereby
> requested.

Doc. 29, Ex. A; doc. 29-2, p. 2.  This document does not have any stamp from the institution showing that it was mailed, and does not contain a certificate of service showing the date of mailing or service upon the proper parties.  Exhibit A, however, does indicate that Petitioner was aware of the July 26, 2005, order.

The docket of the First District Court of Appeal does not reflect that that Court received Exhibit A.  Exhibit A has no date on it, and no indication whatsoever that it was mailed to the First District Court of Appeal.  It has no indication that it was served upon the proper parties.  It is concluded that the Exhibit was never submitted to prison officials for mailing to the First District Court of Appeal.

More important, Exhibit A did not comply with the First District Court of Appeal's order, which plainly required that Petitioner file "a certificate of service which demonstrates your compliance with this order" within "15 days from the date of this order," which was July 26, 2005.  Petitioner has presented no copy of a certificate of service of his petition upon the State Attorney, and there is no record of such a certificate on the docket of that court.

I can see no logical distinction between what happened to Petitioner's petition in the First District Court of Appeal and the rulings in Hurley and Sibley.  The Florida Appellate Rule establishes a procedure for properly filing a petition alleging ineffective assistance of appellate counsel.  Service upon the state attorney is indistinguishable

from the procedural rule that a Rule 3.850 motion be signed under oath, that a petition

be accompanied by the filing fee where one is required, or that a motion or petition be

timely filed according to state law.  Until the procedural rule was followed, the First

District Court of Appeal would not entertain this petition.  Service upon the state

attorney was a "condition of filing."  Like the failure to file under oath or to pay the fee,

the lack of service was curable.  The First District Court of Appeal gave Petitioner a

chance to cure his filing defect, but he did not do so.[7]  That court then found that

Petitioner had not cured his filing error and dismissed his petition.  As <u>Siebert</u> reiterated,

that is "the end of the matter for purposes of § 2244(d)(2)."  Accordingly, this petition for

writ of habeas corpus was not "properly filed" under state law and did not toll any of the

AEDPA time.

**The appeal of the denial of the Rule 3.850 motion**

This leaves for consideration whether Petitioner's appeal from the denial of his

Rule 3.850 motion, case number 1D06-195, provides any tolling after the mandate

issued on June 28, 2006.

Petitioner first alleged in his petition that he filed a motion for rehearing on

August 16, 2006, and asserted that the motion was still pending.  Petition, p. 4; doc. 8-2,

p. 3 on ECF.  There was no motion for rehearing included with the petition, but there

was a "Motion to Recall Mandate" dated August 16, 2006, attached as App. C to the

---

[7] Had Petitioner cured his initial error and served the state attorney, his actions would have related back to the original filing.  *Cf.*, <u>Patrick v. McDonough</u>, 2007 WL 3231740, *11 (N.D. Fla. Oct 29, 2007) (No. 4:06cv543-SPM/WCS).  *Cf.* <u>Mederos v. United States</u>, 218 F.3d 1252, 1254 (11th Cir. 2000) (second 28 U.S.C. § 2255 motion, substantially identical to the first that was insufficient for lack of a signature, should have been liberally construed as an amendment relating back to the initial filing).

Petition.  Doc. 8-6, p. 12 on ECF.[8]  In this attached motion, Petitioner asserted that on

June 2, 2006, his appeal was denied, and that he submitted a motion for rehearing on

about June 9, 2006.  *Id.*  He argues that his motion for rehearing has yet to be heard

and, thus, the mandate should be recalled.  *Id.*

The Clerk of the Court for the Florida First District Court of Appeal, Jon S.

Wheeler, states in his affidavit that the Clerk dockets "all incoming pleadings and

motions assigned to a particular case, and places the original paper in the Clerk's case

filed.  This procedure is followed even if the case is already closed."  Doc. 32, Ex. C;

doc. 32-2, p. 11.  A motion to recall the mandate would have been docketed even if the

case had been closed.  *Id.*  "Correspondence that is addressed to the clerk of court and

that is not construed as a motion or pleading is retained in a correspondence file, and is

answered.  All notices of inquiry are answered."  *Id.*  Clerk Wheeler states that in case

number 1D06-195,  "[n]either the file nor the docket reflects that Mr. Cross filed a

motion for rehearing in June 2006, nor a motion to recall the mandate in August 2006."

*Id.*; doc. 32-2, p. 12.  Likewise, "[a] review of the correspondence file shows no

correspondence received from Mr. Cross after the case was closed in August 2006, nor

any response by me.  Again, any correspondence received would have been placed in

this file and answered."  *Id.*

---

[8] The documents were transferred from the Middle District of Florida into this
District's electronic case filing docket.  The documents came with the docket numbers
electronically assigned from the Middle District, and then electronically had assigned the
docket numbers for this district, and unfortunately, to someone viewing these
documents on the computer, the two numbers merge and make it difficult to read.  For
ease of reference, it is noted that if all of document 8 is viewed as a consolidated
document, this exhibit begins on page 94 of the consolidated document.

Petitioner avers that on June 14, 2006, he submitted to prison officials for mailing to the First District Court of Appeal a motion for rehearing in case number 1D06-195, and that proper postage was affixed by prison officials.  Doc. 29, p. 5.  A copy of this motion for rehearing is attached.  Doc. 29, Ex. B; doc. 29-2, pp. 4-5.  The certificate of service may be a recent fabrication as it shows service on June 14, 2006, upon the "Office of the Attorney General" *and the "Clerk of the Court United States District Court.*"  Doc. 29, Ex. B; doc. 29-2, p. 5.  Petitioner had no case pending in this court on June 14, 2006.  It is noteworthy that Petitioner did not file this second page of this motion for rehearing until this court noted that the page with a certificate of service was missing in the earlier filing.

Respondent, however, has now provided evidence that a motion for rehearing in case number 1D06-195 was received by the Florida Office of the Attorney General from Petitioner on June 26, 2006.  Doc. 32, p. 4.  That document has been filed as doc. 32, Ex. D; doc. 32-3, pp. 1-29 and doc. 32-4, pp. 1-48.  It is 77 pages long.  At the end, there is a date stamp by officials at Columbia Correctional Institution that the motion for rehearing was provided to them for mailing on June 17, 2006.  This document is not the same motion for rehearing that Petitioner provided to the court, which is only a 2 page document.  Doc. 29, Ex. B; doc. 29-2, pp. 4-5.

Respondent has also provided a copy of a motion to recall the mandate in the same case that was located in the Attorney General's files.  Doc. 32, Ex. E; doc. 32-4, pp. 47-48.  It was date stamped as received by the Attorney General on August 28, 2006, and has a certificate of service and a Columbia C.I. "Provided for Mailing" stamp

both dated August 23, 2006.  *Id.*; doc. 32-4, p. 48.  The copy of this motion to recall the mandate is identical to the copy that Petitioner provided as Ex. C to his petition.

The affidavit of Hank Riley, records specialist for the Attorney General, avers that these two documents came from the Office of Attorney General's file.  Doc. 32, Ex. F; doc. 32-5, p. 3.

It is concluded from this evidence that on June 17, 2006, Petitioner submitted to prison officials for mailing to the First District Court of Appeal in case number 1D06-195 a motion for rehearing.  The motion he mailed is the 77 page document in the files of the Office of Attorney General, not the 2 page document Petitioner submitted to this court.  It is also concluded that on August 23, 2006, he submitted to prison officials for mailing a motion to recall the mandate in the same case.  Neither document was actually filed with the Florida First District Court of Appeal, and that case has been closed since the mandate issued on June 28, 2006.

The "mailbox" rule has been with us since 1988.  The rule originated with Houston v. Lack, *supra*, footnote 4.  Pursuant to the "mailbox" rule, a document submitted by a prisoner to prison officials to be mailed and filed in the intended forum is deemed to have been "filed" on the date delivered to prison officials for mailing.  Adams v. United States, 173 F.3d at 1341.  The burden of proof is placed upon prison officials:

> Accordingly, *Houston* places the burden of proof for the pro se prisoner's date of delivering his document to be filed in court on the prison authorities, who have the ability to establish the correct date through their logs.

Garvey v. Vaughn, 993 F.2d 776, 781 (11th Cir. 1993).

Garvey v. Vaughn, *supra*, said in passing that "*Houston* is limited to federal *court* filings." *Id.*, at 782, n. 15 (emphasis by the court). This comment, however, was made as the court distinguished a direct federal court filing from a notice of appeal given to prison officials to be given to another person, and it may not have been intended to have broader application to state court filings.

There is a split in the circuits as to whether the federal mailbox rule applies to determine whether a federal habeas petitioner is entitled to tolling pursuant to § 2244(d)(2) for state filed proceedings. Adams v. LeMaster, 223 F.3d 1177 (10th Cir. 2000) held that the mailbox rule does not apply to prisoners seeking state post-conviction relief in New Mexico. Addressing the tolling provision of § 2244(d)(2), the court said that the question was "how do we determine when a state petition for post-conviction relief is 'properly filed.' " 223 F.3d at 1180. The court said that the first question is whether "federal procedural law supplies the definition of a 'properly filed' state petition for purposes of § 2244(d)(2)." *Id.*, at 1181. Citing court of appeals cases preceding Artuz v. Bennett, the court concluded that state law must govern whether a state motion or petition was "properly filed" as intended by § 2244(d)(2).[9]  *Id.* Recognizing that there is a difference between determination of *whether* a petition is properly filed and *when* it is properly filed, the court concluded that the federal procedural law of Houston v. Lack does not apply to determine when "when the tolling period for a properly-filed state petition begins." *Id.* The court cited Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1564 (2000) as in accord. The court also cited the Eleventh Circuit's decision in Webster v. Moore, 199

---

[9] That ruling was confirmed by Artuz v. Bennett and reaffirmed by Pace.

F.3d 1256 (11th Cir. 2000) (per curiam) as finding that state procedural law must be applied so as to afford the high degree of deference to state courts as intended by the AEDPA.[10]  *Id.*  Concluding that New Mexico courts would not apply a state version of the mailbox rule,[11] and thus additional tolling by application of such a rule was not available, the court ruled that the federal habeas petition before it was untimely filed.[12]

Coleman v. Johnson took a different approach.  It declined to extend the mailbox rule "to the determination of filing dates for state habeas applications" because "such a ruling would require us to interpret state rules of filing and to address the filing systems of state courts."  184 F.3d at 402 (footnote omitted).  Instead, the court said that such cases would be examined for equitable tolling.  *Id.*  Despite this reluctance to interpret state law, Causey v. Cain, 450 F.3d 601 (5th Cir. 2006) held that Coleman v. Johnson was an application of Texas law.  450 F.3d at 605.  In Causey, it was found that "the Louisiana Supreme Court has applied the prison mailbox rule with unfailing consistency as a matter of law."  *Id.*, at 604.  The court concluded that the prisoner's "application for

---

[10] Webster, also decided before Artuz v. Bennett, held that to be "properly filed," a state petition must meet state deadlines, and it also held that a state court's determination that a state petition was time-barred was entitled to "due deference."  199 F.2d at 1259.  Thus, the court held that a third Rule 3.850 motion, dismissed by the state court as procedurally barred by Florida's two year statute of limitations, was not "properly filed" as intended by § 2244(d)(2).  *Id.*, at 1258-1259.

[11] New Mexico courts had not yet decided this state law question.  223 F.3d at 1182.  Those courts probably would not adopt the rule in this context as there were no time limits for filing a state habeas petition in New Mexico.  *Id.*, at 1183.

[12] Subsequently, the Tenth Circuit found that the mailbox rule is not applied in Oklahoma, and consequently, such a rule is not available to give rise to § 2244(d)(2) tolling in federal court for a petition arising from an Oklahoma conviction.  Moore v. Gibson, 250 F.3d at 1295 (10th Cir. 2001), *cert. denied*, 534 U.S. 1000 (2001).

direct review" in state courts was filed when the prisoner "placed it in the prison mail system."  *Id.*, at 607.

The Second Circuit reached a conclusion contrary to Adams v. LeMaster in Fernandez v. Artuz, 402 F.3d 111 (2d Cir.), *cert. denied*, 546 U.S. 816 (2005).  This was a federal habeas petition from a New York State conviction.  New York, in other contexts, "often rejects the mailbox rule announced in *Houston v. Lack*."  402 F.3d at 115.  But the state petition there at issue, a petition for writ of *coram nobis*, had no time limit under New York law and thus, the Second Circuit reasoned, "New York State courts will never have occasion to decide whether the prison mailbox should apply to them."  *Id.*, at 116.  The court concluded:

> There is no and can be no real conflict between state law and federal law where there is no state deadline for filing the petition that tolls the AEDPA limitations period.  We therefore apply the federal mailbox rule to ascertain when a state petition is "properly filed" for purposes of tolling the AEDPA statute of limitations.

*Id.*, at 116.  The court cited Anthony v. Cambra, 236 F.3d 575 (9th Cir. 2000) as reaching the same conclusion, but noted that Koerner v. Grigas, 328 F.3d 1039, 1043 n. 1 (9th Cir. 2003) held that a third state petition was not "filed" until actually received because Nevada does not recognize a mailbox rule.  *Id.*, at 114.

Florida consistently applies the mailbox rule with respect to prisoner post-conviction filings.  Haag v. State, 591 So. 2d 614 (Fla. 1992) (Rule 3.850 motion).  Subsequently, the Florida Supreme Court held:

> Therefore, in order to carry out the intent of our decision in *Haag*, henceforth we will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date, if that the pleading would be timely filed if it had been received and

file-stamped by the Court on that particular date. This presumption will shift the burden to the State to prove that the document was not timely placed in prison officials' hands for mailing.

Thompson v. State, 761 So. 2d 324, 326 (Fla. 2000).

In Ellis v. Hooks, 219 Fed.Appx. 865 (11th Cir., Feb 28, 2007) (not selected for publication in the Federal Reporter, No. 06-12702), our circuit assumed without deciding that the Alabama mailbox rule applies to determine the date of filing of an Alabama Rule 32 post conviction petition.  Applying Artuz v. Bennett and Webster v. Moore, our circuit continues to closely review state law when determining whether a state petition or motion has been "properly filed" for purposes of § 2244(d)(2) tolling.  Wade v. Battle, 379 F.3d 1254, 1259-1261 (11th Cir. 2004).  It is concluded from these cases, therefore, as well as those discussed above, that our circuit would apply state law to determine whether a mailbox rule should apply.  However, that is easy, as Florida law is quite clear on the subject.  Therefore, it is also concluded that our circuit would apply the Florida mailbox rule to determine whether the two motions at issue here were "properly filed" as intended by § 2244(d)(2).

The next question to consider is whether the motions were "properly filed" even though never received by the First District Court of Appeal and never docketed.  There is very little case law on this issue.

Johnson v. State, 718 So. 2d 909 (Fla. 1st DCA 1998) held that the Florida mailbox rule applied when a notice of appeal was mailed to the trial judge and never received by the clerk of court.  718 So. 2d at 910.  That situation, of course, is distinguishable from the case at bar because no judicial officer received a copy of the alleged mailings by Petitioner.

Gracey v. United States, 131 Fed.Appx. 1890 (11th Cir., April 29, 2005) (not

selected for publication in the Federal Reporter, No. 04-13313) held that a § 2255

motion would have been "filed" when submitted to prison authorities for mailing, even

though never received by the district court.  The court relief upon Huizar v. Carey, 273

F.3d 1220, 1222 (9th Cir. 2001).  The court remanded to determine if in fact the motion

had been submitted to prison authorities, reminding the district court that the burden of

proof was upon the prison authorities.  This, however, was an unpublished opinion and

it is a gloss on the federal mailbox rule, not the Florida rule.

In Huizar v. Carey, a state habeas petition was presented to prison officials for

mailing on April 15, 1996.  273 F.3d at 1223.  It never was received by the state court.

Eventually, on January 19, 1999, another copy of the petition was actually filed in the

state court.  Id., at 1222.  The court held that the mailbox rule "applies with equal force"

even when the petition is never actually filed with the court.  Id., at 1223.  The court

said:

> A prisoner who delivers a document to prison authorities gets the benefit
> of the prison mailbox rule, so long as he diligently follows up once he has
> failed to receive a disposition from the court after a reasonable period of
> time.

Id. (footnote omitted).  Oddly, in the footnote the court cited to contract law governing

offer and acceptance, but none of the cases cited imposed a "due diligence"

requirement.  273 F.3d at 1223, n. 3.

It would seem that the "due diligence" requirement of Huizar has no place in

determining whether something has been "properly filed" under state law.  The

document either was "properly filed" or it was not.  Due diligence would seem more

applicable to equitable tolling.  Further, "due diligence" was not imposed in <u>Gracey v.</u>

<u>United States</u>.  The only other guidance as to this seems to appear in a passage from

<u>Sibley v. Culliver</u>, a passage when would seem to make "fault" and "due diligence"

irrelevant:

> Under § 2244(d)(2), however, statutory tolling is available only if an application for review *is filed*; it does not contain language directing us to consider whether a putative petitioner is responsible for an application not being successfully filed. . . .
>
> \*                    \*                    \*
>
> Unlike § 2254(e)(2), it [§ 2244(d)(2)] does not contain language directing us to consider whether the prisoner is at fault for not having filed the application; *our only concern is whether an application was filed at all, regardless of fault.*

<u>Sibley v. Culliver</u>, *supra*, n. 3, 377 F.3d at 1202 (emphasis added).  In other words, the

failure of prison officials to send the motions to the First District Court of Appeal, if that

is the case, or the due diligence or fault of Petitioner with regard to the complete default

in actual filing, are both immaterial.

In summary, as a matter of both fact and law, it is concluded that for purposes of

determining tolling under the AEDPA, Petitioner properly filed a 77 page motion for

rehearing in case number 1D06-195 on June 17, 2006, and properly filed a 2 page

motion to recall the mandate in the same case on August 23, 2006, both being the

dates these documents were submitted to prison officials for mailing.

Respondent argues again in the last document filed that "once the mandate

issued, the limitation time began running immediately."  Doc. 32, p. 6.  Cited for this is

<u>Lawrence v. Florida</u>, *supra*.  Thus, argues Respondent, the motion for rehearing could

not have provided tolling.

With respect to the motion to recall the mandate, Respondent initially argued that the motion was not an application for collateral relief and thus could not have tolling effect under the AEDPA.  Doc. 26, p. 9 n. 2.  Cited was <u>Woodford v. Garceau</u>, 538 U.S. 202, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003).  That case simply determined the question of when a § 2254 petition becomes "pending" for purposes of applying the AEDPA, which became effective on April 26, 1996.  Federal petitions which were "pending" before that date were not covered by the AEDPA.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  The Court concluded that a motion for appointment of counsel, filed before April 26, 2006, was not an application for habeas relief seeking an adjudication on the merits of petitioner's claims.  538 U.S. at 207, 123 S.Ct. at 1402.  The Court was construing 28 U.S.C. § 2254(d), which applies only to "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . ."  *Id*.

This is not the tolling issue before this court.  As already noted above, <u>Lawrence v. Florida</u> said:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

127 S.Ct. at 1082 (quoting 28 U.S.C. § 2244(d)(2).  This court's focus is entirely upon whether Petitioner's Rule 3.850 proceeding was still pending in state court after June 28, 2006.

In the most recent filing, Respondent argues that even if the motion to recall the mandate had been actually filed in the First District Court of Appeal, that court would

have lacked jurisdiction to grant it because the term had ended.  In Florida, each district court of appeal "shall hold two regular terms each year at its headquarters, commencing respectively on the second Tuesday in January and July."  FLA. STAT. § 35.10.  The first term in 2006 ended on Monday, July 10, 2006, the day before the second term commenced.  The mandate issued on June 28, 2006.  Addressing the terms of Florida intermediate appellate courts, the Florida Supreme Court ruled:

> All things must have end, even a district court's power to correct inconsistencies.  The reasons for this form the bedrock of Anglo-American jurisprudence: "There must be an end of litigation.  Public policy, as well as the interests of individual litigants, demands it, and the rule just announced is indispensable to such a consummation." . . .  *An appellate court's power to recall its mandate is limited to the term during which it was issued.*

State Farm Mut. Auto. Ins. Co. v. Judges of Dist. Court of Appeal, Fifth Dist., 405 So.2d 980, 982-983 (Fla. 1981) (emphasis added, citations omitted).  The court concluded that the intermediate appellate court "was without jurisdiction" to recall its mandate after its term had ended.  *Id.*, at 983.

There are procedural exceptions to this rule, however.  In Williams v. State, 947 So. 2d 694, 695 (Fla. 4th DCA), the court declined to address the motion to recall the mandate because the term had expired, but treated it as a separate petition for writ of habeas corpus and granted relief.

In Zielke v. State, 839 So.2d 911 (Fla. 5th DCA 2003), *review denied*, 954 So.2d 29 (Fla. 2007), a motion for rehearing was received by the court on January 8, 2003, one day beyond the 15 days provided for a motion for rehearing, the mandate issued on January 9, 2003, "apparently on the premise that no timely motion had been filed," and the term ended on January 13, 2003.  947 So. 2d at 912.  On January 15, 2003, a

motion to recall the mandate was received by the court.  *Id.*  On January 16, 2003, the motion for rehearing was stricken as untimely.  *Id.*  That decision was then reconsidered, and the motion was deemed to have been timely filed.  *Id.*, p. 913.  The court concluded that its jurisdiction had not expired " because a motion for rehearing subsequently determined by us to be timely was filed and pending when the prior term of court ended."  *Id.  Accord*, Plucinik v. State, 885 So .2d 478 (Fla. 5th DCA 2004).

These cases, particularly Zielke and Plucinik, considerably erode Respondent's jurisdictional argument.  Had the motion for rehearing and the motion for recall of the mandate actually been docketed in the First District Court of Appeal, these cases support the view that relief could have been granted despite the expiration of the term.

In summary, I recommend that the court deny Respondent's motion to dismiss, finding that the AEDPA period was tolled by the mail-box rule "filing" of the motion for rehearing coupled with the mail-box rule "filing" of the motion to recall the mandate.

The logic of this recommendation depends entirely upon the shaky premise that that the mail-box rule creates a filing event that gives rise to AEDPA tolling even though the court in which the filing was supposed to have taken place never received the document.  This seems to me to be wrong.  There should not be AEDPA tolling where there is no active state case pending.  The purpose of tolling is to acknowledge the role of state courts as they consider the merits of challenges to state convictions.  I believe that the mail-box rule should be confined to the issue of *when* a motion that actually is filed is deemed to have been filed.  It should not apply, at least not in the AEDPA tolling context, to create a fictional tolling event that could not have possibly have advanced the salutary purpose of exhaustion of state court remedies.  However, I have reluctantly

followed the rulings of <u>Gracey v. United States</u> and <u>Huizar v. Carey</u> in this recommendation.

I note for the benefit of the parties that while the time for initial objections to this report and recommendation is extended to 15 days, the time for responses is shortened to 7 days.

Accordingly, it is **RECOMMENDED** that Respondent's motion to dismiss, doc. 19, be **DENIED** and the petition be remanded for consideration in the merits.

**IN CHAMBERS** at Tallahassee, Florida, on March 7, 2008.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within <u>7 days</u> after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**